**AMERICAN AUTO WASH, INC., Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1999.
Decided April 30, 1999.

Kenneth Fleisher, Philadelphia, for petitioner.

Peter J. Yoon, Lee Park, for respondent.

Before COLINS, President Judge, SMITH, J., and McCLOSKEY, Senior Judge.

COLINS, President Judge.

American Auto Wash, Inc. (AAW) petitions for review of the Environmental Hearing Board (Board) order approving the assessment of penalties against AAW for its failure to install Stage II vapor recovery technology at three of its gasoline stations [1] by the statutory deadline of November 15, 1993.[2] On May 2, 1996, the Department of Environmental Protection (DEP) cited AAW for violations of the Act and imposed against the three stations a civil penalty in the amount of $78,309 for its failure to install the Stage II vapor recovery systems by the statutory deadline; AAW installed the systems approximately nine to ten months after the deadline.[3]

The Pennsylvania General Assembly enacted the Act in order to protect the Commonwealth's air resources and to implement the provisions of the federal Clean Air Act.[4] Section 2 of the Act, 35 P.S. § 4002. In 1992, the General Assembly added Section 6.7, 35 P.S. § 4006.7, which imposed deadlines for implementing Stage II vapor recovery systems in order to control volatile organic compounds released at gasoline-dispensing facilities, i.e., gasoline stations. In Montgomery and Delaware Counties, which are classified as serious or severe ozone nonattainment areas, facilities that dispensed an average of more than 100,000 gallons of gasoline per month were required to implement Stage II con-

trols no later than November 15, 1993. AAW's Norristown, Parkside, and Upper Darby stations fell into this category. During 1993, a station owner could comply with the Stage II requirements by retrofitting existing dispensers with CARB-approved [5] balance systems or vacuum-assist technology or by replacing existing dispensers with new dispensers that incorporated the vacuum-assist technology. (Notes of Testimony (N.T.), pp. 332–342; Finding of Fact No. 31.)

AAW appealed the imposition of civil penalties to the Board. AAW asserted that despite its due diligence it was unable to meet the statutory deadline because of circumstances beyond its control. AAW asserted that it did not take timely delivery of the systems it ordered because of delayed certification of the systems, which led to backlogs at the manufacturer; that manufacturers and installers gave delivery priority to the large oil companies; and that unfavorable weather conditions further delayed installation. AAW also claimed that it justifiably relied on statements made by others in the industry and by DEP representatives to the effect that noncompliance would be tolerated in light of the delays in certification and testing the systems.

Before the hearing on the merits of AAW's appeal, DEP filed a motion in limine seeking to strike six claims presented in AAW's first pre-hearing memorandum

1. The three facilities were located in Norristown, Montgomery County, and in Parkside and Upper Darby, Delaware County.

2. Section 6.7 of the Air Pollution Control Act (Act), Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. § 4006.7, added by Section 9 of the Act of July 9, 1992, P.L. 460, effective November 15, 1992, provides that after the deadlines, no gasoline station owner or operator may transfer, or permit the transfer, of gasoline into a motor vehicle fuel tank unless the dispensing facility has been equipped with the Stage II vapor recovery or collection technology. For facilities like AAW's, which dispense more than 100,000 gallons of gasoline per month, the law mandated compliance no later than one year after

the amendment's effective date, i.e., November 15, 1993. Section 6.7(b)(3) of the Act, 35 P.S. § 4006.7(b)(3).

3. The Norristown facility was in compliance as of August 22, 1994; the Upper Darby and Parkside facilities were in compliance as of July 15, 1994.

4. 42 U.S.C. §§ 7401–7431.

5. CARB refers to California Air Resources Board, which approves systems as being 95 percent efficient at recovering gasoline vapors. DEP approves Stage II controls that collect at least 90 percent of gasoline vapors. CARB-approved equipment meets the Pennsylvania requirements.

but not raised in its notice of appeal and to preclude AAW from presenting evidence in support of those claims. In ruling on that motion, the Board concluded that it had no jurisdiction to consider claims not raised in the notice of appeal, and that an amendment to its rules permitting amendment of appeals in specified circumstances applied only to appeals filed after September 2, 1996. The Board granted DEP's motion with respect to five of the six claims. It excluded as irrelevant evidence that DEP did not assess penalties, or assessed significantly reduced penalties, against other owner/operators who failed to install the Stage II equipment by the deadline; and evidence that DEP's enforcement discretion was politically influenced or motivated.

The Board found that AAW failed to meet the Stage II deadline at its Norristown, Parkside, and Upper Darby stations despite its knowledge that it could have met the deadline at each of the stations by either retrofitting existing gasoline dispensers or installing new dispensers equipped with CARB-approved Stage II technology. The Board acknowledged that station owners preferred to install vacuum-assist systems in favor of balance systems because the vacuum-assist systems were more efficient, easier for customers to use, and easier and less costly to maintain. The Board found that based on that preference, AAW decided to install improved vacuum-assist systems with the knowledge that these newer systems would not be available in time to meet the November 15, 1993 compliance deadline. Furthermore, the Board found that AAW did not contract for underground work, which needed to be done in advance of installing the Stage II technology, until October 1993 even though it approached the contractor

in early 1993 and the work could have been done before the November 1993 deadline. (Finding of Fact No. 27.) The Board concluded that DEP had met its burden of proving the fact of the violation and the reasonableness of the penalty, and that AAW failed to meet its burden of establishing the impossibility of compliance by the statutory deadline.

On appeal [6] to this Court, AAW raises the following issues: 1) whether the Board erred in excluding evidence on whether DEP exercises its enforcement discretion fairly and uniformly, its willingness to reduce or forgive penalties imposed on large oil companies and some independent dealers, and political influence on DEP's enforcement discretion; 2) whether the Board erred in concluding that the penalty was appropriate in light of AAW's justifiable belief that the deadline was not firm, DEP's extension of deadlines for other station owners, and circumstances beyond AAW's control that resulted in delayed delivery of Stage II systems; 3) whether the Board erred in concluding that the penalty was reasonable; and 4) whether the Board is a biased forum so closely linked with DEP that it failed to objectively weigh the evidence AAW introduced and sought to introduce.

### Exclusion of Evidence

The fundamental consideration in determining the admissibility of evidence is whether the evidence is relevant to the fact to be proved. *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983). The Board granted DEP's motion in limine, striking most of the claims. The Board precluded AAW from introducing evidence that DEP did not penalize, or assessed significantly reduced penalties against, other station owners/operators who failed

---

6. Our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether the Board committed constitutional violations or errors of law. 2 Pa.C.S. § 704. Moreover, an administrative agency has broad discretion in the performance of its administrative duties and functions, and this Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith, or blatant abuse of discretion. *Herzog v. Department of Environmental Resources*, 166 Pa.Cmwlth. 114, 645 A.2d 1381 (1994).

to install the Stage II equipment by the deadline, and from introducing evidence that DEP's enforcement discretion was politically influenced or motivated.[7]

■ The Board ruled that evidence on the issues of disparate treatment and the motivation behind DEP's exercise of its enforcement discretion was irrelevant to the issues raised in AAW's notice of appeal, and we concur. Although we are troubled by allegations[8] that DEP reduces penalties against large oil companies while using its enforcement discretion as a club against independent operators; however, AAW did not raise these issues in its notice of appeal. Given the broadest possible reading, the notice of appeal essentially alleged that AAW exercised due diligence and that its noncompliance was caused by circumstances beyond its control. It also alleged that AAW justifiably relied on statements made by DEP representatives and others in the industry to the effect that the deadline would not be enforced because of delays in equipment certification and that AAW reasonably believed that it would not be penalized. The evidence the Board excluded was irrelevant to the issues of AAW's noncompliance with the deadline, the reasons for its noncompliance, or the reasonabeness of the penalty imposed on AAW.

## Violation of the Stage II Prohibition

■ DEP met its burden of establishing that AAW did not meet the November 15, 1993 deadline for installing Stage II vapor recovery technology at its three stations in Montgomery and Delaware Counties, and AAW did not contest that fact. Failure to comply with the Stage II deadline and subsequently permitting gasoline to be transferred to a motor vehicle fuel tank using dispensers not equipped with the Stage II technology constituted violations for which penalties may be imposed. Section 8 of the Act, 35 P.S. § 4008. Instead, AAW asserted the impossibility of complying, citing circumstances beyond its control.

■ Substantial evidence of record supports the Board's finding that AAW could have complied with the statutory deadline by installing approved Stage II technology—balance systems and vacuum-assist systems—that were available well in advance of the deadline. The evidence also supports the findings that AAW chose to install a particular vacuum-assist system that would not be available until 1994 and to defer completion of the preliminary underground work until after the deadline, timing its completion to coincide with the availability of the newly available vacuum-assist system. Although AAW's preference for the newer system is understandable, it does not justify noncompliance with a statutory deadline. Although AAW presented evidence that its supplier gave delivery preference to large oil companies, substantial evidence supports the Board's finding that AAW could have obtained the Stage II equipment from a Pennsylvania supplier in time to meet the deadline. The record demonstrates that AAW failed to adequately investigate the available options in its choice of equipment and supplier.

## Reasonableness of the Penalty

■ Given the fact of the violations at AAW's three stations, DEP did not abuse

---

7. Specifically, the Board excluded evidence in support of allegations that DEP reduced civil penalties against Mobil Oil Company at 45 locations to $2,000 per station and also significantly reduced penalties against Sun Oil Company at 12 locations. It also precluded evidence that DEP's enforcement discretion was influenced by political intervention, i.e., lobbying.

8. The parties stipulated that one independent station owner received a reduced penalty, but the record includes testimony to the effect that the station owner in question contacted DEP well before the deadline and worked out a plan for voluntary compliance. Although not of record, DEP may have arranged similar voluntary compliance agreements with large oil companies in exchange for reduced penalties.

its discretion in assessing a penalty. AAW argues that in assessing the penalty, DEP was compelled to consider mitigating factors and reduce the penalty accordingly.

Section 9.1(a) of the Act, 35 P.S. § 4009.1(a),[9] provides that DEP may assess a civil penalty regardless of whether the violation was willful.

The civil penalty so assessed shall not exceed ten thousand dollars ($10,000.00) per day for each violation....In determining the amount of the penalty, the department shall consider the wilfulness[sic] of the violation; damage to air, soil, water or other natural resources of the Commonwealth or their uses; financial benefit to the person in consequence of the violation; deterrence of future violations; cost to the department, the size of the source or facility; the compliance history of the source; the severity and duration of the violation; degree of cooperation in resolving the violation; the speed with which compliance is ultimately achieved; whether the violation was voluntarily reported; other factors unique to the owners or operator of the source or facility; and other relevant factors.

According to the record, DEP assessed the penalty in accordance with its Stage II Penalty Policy. (See Commonwealth Exhibit No. 29.) Using throughput data for each of the three stations, DEP assessed a $0.01 per gallon pumped from November 15, 1993 through March 31, 1994 and $0.03 per gallon pumped from April 1, 1994 until the date the station came into compliance. The higher base penalty amount was assessed during the months when the amount of ground level ozone is higher. Because the three AAW stations each pumped more than 100,000 gallons per month, the penalty was assessed at the highest rate of $0.03 per gallon during the ozone season; the penalty would have been assessed at $0.02 if the stations pumped less than 100,000 per month.

After calculating the base penalty, DEP applied a series of factors that would raise or lower the penalty. DEP raised the penalty by 10 percent based on the size of the facilities (i.e., average monthly throughput greater than 100,000 gallons per month). DEP also considered the following factors:

1. Environmental Impact of the violations. The policy called for a 10 to 20 percent increase in the penalty for moderate to severe impact; no adjustment for low impact.

2. Degree of Cooperation. The policy called for a 10 percent reduction if the violator notifies DEP, a 10 percent increase if the violator does not cooperate after being notified by DEP, and no adjustment if DEP discovers the violation.

3. Compliance History. The policy called for no more than 30 percent increase, considering the nature, number, and recentness of violations.

4. Willfulness of the violations. The policy called for a 20 percent reduction for accidental violations caused by circumstances beyond the violator's control, a 30 percent increase for willful violations where the noncompliance is determined to be intentional and with knowledge that the conduct was illegal, and no adjustment for negligent non-compliance characterized by ignorance of the legal requirements and failure to exercise due care.

5. Financial benefit, i.e., savings, to the violator as a result of non-compliance.

6. Cost to DEP for investigation and litigation.

7. Deterrence penalty.

DEP did not adjust the penalty at all based on its determination that the environmental impact of the violations was low, AAW cooperated after DEP notified it of the violations, AAW's excellent compliance history, and AAW's non-compliance was negligent. DEP adjusted the penalty to account for AAW's financial benefit, but

9. Added by Section 9 of the Act of October 26, 1972, P.L. 989, *as amended.*

declined to assess a deterrent penalty. The penalty was not reduced by any of these factors because AAW failed to notify DEP that it would not meet the November 15, 1993 deadline and because its noncompliance was not deemed to be accidental.

■ Because the base penalty was calculated based on throughput, the subsequent 10 percent increase in the penalty, based on average monthly throughput, constitutes an unreasonable increase based on the same factor. In addition, although the record shows that AAW initially failed to exercise due care in ordering available equipment and scheduling the underground work, at least part of the eight or nine month period of noncompliance was caused by factors beyond its control, i.e., the delayed certification of the dispensers AAW actually ordered. For this reason, DEP should have reduced the penalty in some measure in consideration of this mitigating factor (e.g., 10 percent); however, we cannot conclude that DEP's failure to do so constitutes abuse of discretion and we cannot substitute our discretion for DEP's.

■ Finally, we reject AAW's claim that the Board failed to objectively entertain its arguments and/or abused its discretion in narrowly construing the Air Pollution Control Act and DEP's regulations. The record contains no evidence that the Board treated DEP more favorably than it treated AAW or that it failed to discharge its adjudicative duties in an objective manner.

For the reasons stated above, we affirm the Board's order to the extent that it upheld the assessment of the civil penalty, and the penalty is reduced to the extent that DEP increased the base penalty by 10 percent ($6,616.82) based on the size of the stations. The penalty should be limited to the base penalty of $66,168.22 (N.T., p. 66) plus the financial benefit for noncompliance of $5,275.88 ($5,524.09 less $248.21 as stipulated; N.T. p. 77–78) for a final penalty amount of $71,444.10.

ORDER

AND NOW, this 30th day of April, 1999, the order of the Environmental Hearing Board in the above-captioned matter is affirmed to the extent that it upheld the assessment of the civil penalty. The penalty amount is reduced to the extent that DEP increased the base penalty by 10 percent based on the size of the stations. The penalty should be limited to the base penalty of $66,168.22 (N.T., p. 66) plus the financial benefit for noncompliance of $5275.88 ($5,524.09 less $248.21 as stipulated; N.T. p. 77–78) for a final penalty amount of $71,444.10.

SMITH, Judge, dissenting.

I respectfully dissent from the majority's decision to recalculate the penalty that the Department of Environmental Protection (DEP) assessed against American Auto Wash, Inc. (AAW) for its failure to timely install Stage II vapor recovery technology at specified gasoline stations by November 15, 1993 pursuant to Section 6.7 of the Air Pollution Control Act (Act), 35 P.S. § 4006.7. I would instead vacate the order of the Environmental Hearing Board (Board) and remand the matter for the agency to reconsider the reasonableness of the amount of the penalty in question. Moreover, I believe that on remand AAW should be permitted to introduce the excluded evidence concerning the amount of the penalties that DEP assessed against Mobil Oil Company and Sun Oil Company for similar failures to timely install Stage II technology.[1]

---

1. I note that the Board considered the reasonableness of the amount of the penalty in its decision and reduced the penalty by $248. DEP did not file a cross-appeal of the Board's decision, and accordingly DEP has waived any objection concerning whether the issue of the reasonableness of the penalty was properly before the Board. *See Pennsylvania Human Relations Commission v. Chester Housing Authority*, 458 Pa. 67, 327 A.2d 335 (1974).

Section 9.1 of the Act authorizes DEP to assess penalties for violations of the Act and assigns DEP wide discretion to determine the appropriate amount of such penalties. The majority recalculates AAW's penalty based on a policy that DEP has developed to aid its assessment of penalties for violations of the Stage II vapor recovery system installation deadline. As the majority demonstrates, it is possible to apply the facts of this case to that policy and mathematically calculate a new penalty. However, by doing so the majority improperly substitutes its judgment for the agency's discretion as to the final penalty.

Penalty assessment is more than a mere mathematical calculation; DEP must always tailor an appropriate penalty to each individual case. That duty is recognized in the last step of the policy, which requires DEP to conduct an open-ended consideration of other relevant factors. The error identified by the majority could affect the balance of other relevant factors not apparent to this Court so that the agency would reach a final penalty different from the majority's calculation. Accordingly, I believe that this matter must be remanded for the agency to exercise its expertise and discretion in light of the error identified by the majority. *See Medusa Corporation v. Department of Environmental Resources,* 51 Pa.Cmwlth. 520, 415 A.2d 105 (1980) (leaving re-analysis of an appropriate penalty to the expertise of the specialized agency). Moreover, the Court has determined that AAW's noncompliance with DEP's deadline was caused in part by factors beyond its control, and that is a relevant factor which DEP should consider on remand when imposing a proper assessment in accordance with the Court's opinion.

Finally, I believe that the amount of the penalties that DEP has assessed in other cases for the same violation is relevant to determining the reasonableness of the penalty in the instant case. In fact, a principal basis of the Board's determination of the reasonableness of the penalty in this case was DEP's testimony that its application of the penalty policy against AAW was in accordance with the treatment that it gave to other gasoline station operators. Board's adjudication, p. 15. Because the assessments against Mobil Oil Company and Sun Oil Company provide contrary examples of treatment that DEP gave to other gasoline station operators, I believe that evidence concerning the amount of those assessments was relevant and should have been admitted. Any characteristics that distinguish those assessments from the instant case could be identified by DEP on cross-examination through the administrative fact-finding process. It is not for this Court to unnecessarily circumvent that process.