IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Abraham,                  :
            Petitioner         :
                           :
         v.                  :
                           :
Bureau of Professional      :
and Occupational Affairs,    :
State Board of Psychology,  :   No. 64 C.D. 2014
           Respondent    :   Submitted: May 16, 2014

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY              FILED: August 11, 2014

Joseph Abraham (Petitioner), appearing *pro se*, petitions for review from an order of the Bureau of Professional and Occupational Affairs, State Board of Psychology (Board) that imposed civil penalties against him and ordered Petitioner to cease and desist from holding himself out as a psychologist in the Commonwealth until he obtains a license from the Board.

On November 17, 2011, the Department of State (Department) issued an order to show cause and alleged the following:

> 1. Respondent [Petitioner] does not now, nor has he ever held a license to practice psychology in the Commonwealth of Pennsylvania.
> . . . .
> #### Count One
> 4. In or around November 2010, Respondent [Petitioner] maintained a website with the address of www.dr-joseph.com.

5. On this website, Respondent [Petitioner] refers to himself as 'Dr. Joseph Abraham, Online Psychologist-Expert on Human Behavior.'

6. Respondent's [Petitioner's] business address as stated on the website is 204 W. Main Street, Mechanicsburg, PA 17055.

. . . .

9. As part of an investigation, on or about February 28, 2011, an investigator with the Commonwealth of Pennsylvania, Department of State, Bureau of Enforcement and Investigation (BEI) contacted Respondent [Petitioner] via e-mail regarding Respondent's [Petitioner's] services.

10. On or about February 28, 2011, Respondent [Petitioner] replied to the investigator's e-mail, wherein Respondent [Petitioner] directed the investigator to Respondent's [Petitioner's] website and stated he does not provide 'traditional psychological services.'

11. Respondent's [Petitioner's] reply also stated that he provides 'Relationship Advice.'

. . . .

13. On or about June 6, 2011, a BEI investigator sent Respondent [Petitioner] an e-mail inquiring, among other matters, what software is used for the counseling sessions and if it is secure.

14. In his e-mail response, Respondent [Petitioner] stated that he uses the phone and Skype for counseling sessions.

. . . .

16. Based upon the foregoing Factual Allegations, the Board is authorized to impose a civil penalty . . . .

. . . .

## Count Two

18. Based upon the foregoing Factual Allegations, the Board is authorized to impose a civil penalty . . . and/or impose the costs of investigation . . . because Respondent [Petitioner] . . . [held] himself out to the public by any

2

title or description of services incorporating the words 'psychological,' 'psychologist,' or 'psychology' without first having obtained a license pursuant to the ["Professional Psychologists Practice Act] Act.[1]

Order to Show Cause, November 17, 2011, Paragraphs 1, 4-6, 9-11, 13-14, 16, and 18 at 1-3; Certified Record (C.R.) at No. 1.

Petitioner responded:

2. Answer to the Order to Show Cause[:]
a. Regarding the Factual Allegations[:]

a.1 . . .: Lack of Relevancy:  This item presents a correct but an irrelevant statement.  I (the Respondent) [Petitioner] do not practice Psychology in PA and therefore do not need a PA license and [do] not have one.

a.2 . . . The location at 204 W Main Street., Mechanicsburg PA is a dining room of a B&B business I rent hourly; the last time I did so was about two years ago for two hours . . . .

b. Regarding Count One[:]

b.1. . . . The website www.dr-joseph.com describes my services and my professional background but is owned by an Israeli marketing firm . . . I have no legal responsibility or liability for whatever is published . . . . (emphasis added).

b.2.1. . . . The Board has not satisfied the jurisdictional requirements and therefore any claim on anything that is published on the website www.dr-joseph.com is inadmissible.  (emphasis added).

---

[1] Act of March 23, 1972, P.L. 136, as amended, 63 P.S §§ 1201-1218.

3

> b.2.2. . . . I (the Respondent [Petitioner] have dual citizenship (US/Israel), dual residency (PA/Israel) and possess an Israeli license to practice Psychology . . . . The website is available globally as a platform to present my services; it is not a PA entity . . . . (emphasis added).
> . . . .
> Regarding Count Two
>
> c.1 . . . The term 'Online Psychologist lawfully appeared and may appear again on www.dr-joseph.com which is an internet entity 'located' on the Web (which is not PA territory), available globally and is not specifically directed toward PA residents. The 'Disclaimer' indicates that my (the Respondent) [Petitioner] practice of Psychology is not available in the US and Canada . . . . (emphasis added).

Answer to the Order to Show Cause, December 12, 2011, Paragraph 2 at 1, 3, 5, and 7.

On February 22, 2012, the Board held a hearing at which time Larry Berrier (Berrier), investigator supervisor, for the BEI, and Bret Rickert (Rickert), a professional conduct investigator I for the BEI, testified on behalf of the Department.

Berrier testified that a complaint was filed and "[t]he origin of the complaint was an allegation as it relate[d] to the Respondent, Joseph Abraham [Petitioner], [and] related to unlicensed practice activity in psychology." Hearing Transcript (H.T.), February 22, 2012, at 18. Berrier stated that he investigated Petitioner's website at www.dr-joseph.com and found:

> Very affordable and very effective online relationship advice, I'm Dr. Joseph Abraham [Petitioner], online

4

psychologist, <u>expert on human behavior</u>. (emphasis added).

. . . .

Online relationship advice counseling: How do I do it[?] Using a telephone for important confidential matters, either talking person to person or the conference call system, both are very common. Webcam . . . the high-tech Internet video conferencing, takes us one step closer by allowing us to meet and see each other while communicating . . . .

. . . .

<u>Online counseling, therefore, can be similar to the traditional process, engage in ongoing conversations in which you, the client, and I, your on line counselor, life coach or advice provider</u> . . . allows one to handle a variety of behavioral themes, overcome stress-related issues or fear of failure dealing with goal setting and receiving career coaching tips, succeed resolving family conflict and parenting dilemmas. (emphasis added).

H.T. at 22 and 24. Berrier stated that the website included a work shop named "Center for Human Growth and Business Insights" and was located at "204 West Main Street, Mechanicsburg, PA 17055." H.T. at 32. Berrier stated that he did access "the Department of State's license 2000 database . . . [and] conduct[ed] a search of the licensure information related to the State Board of Psychology using Joseph Abraham [Petitioner] as a search and was unable to determine any licensure information relevant to that individual." H.T. at 38-39. "I also did a search . . . for Dr. Joseph Abraham related to the State Board of Social Work, Marriage Counselor, Professional Counselor, Therapists and I did notice that in 2005 . . . an individual named Joseph Abraham [Petitioner] had made an attempt to obtain professional counselor licensure . . . which was still in pending status." H.T. at 39. Berrier concluded that "it [also] did not appear . . . Dr. Abraham was licensed as a professional counselor by the Social Work Board." H.T. at 39.

5

Rickert testified that he received "a request for supplemental investigation in January of 2011 in regards to investigating a Dr. Joseph Abraham [Petitioner] for possible unlicensed practice activity in reference to psychology." H.T. at 50. Rickert found that the information concerning Petitioner was the same information Berrier found. H.T. at 53. Rickert sent an e-mail to Petitioner and requested to schedule an appointment. H.T. at 54. Rickert stated that Petitioner responded to his inquiry and stated "I have developed, more efficient and less expensive than the traditional psychologist way of approaching relationship issues . . . [m]ost rearrangement difficulties or life-changing situations are handled within 4 to 10 sessions . . . [and] [f]ees are $55 to $75 as outlined in my homepage around the middle of the page." (emphasis added). H.T. at 55. Rickert received "another supplemental investigation request in April of 2011 in regards to a Dr. Abraham possibly practicing unlicensed psychology in Pennsylvania." H.T. at 56. Rickert decided to send another e-mail this time posing as an individual named Jim Lindenburger. H.T. at 58. Rickert stated that Petitioner responded and said "[f]our to six sessions usually are sufficient in unhappy attitude cases . . . I use the phone and Skype for webcam . . . [s]ee my fees at the site, $55 to $85 near PayPal button, the payment method, regards, Dr. Joe." (emphasis added). H.T. at 59. Rickert contacted the Mechanicsburg Chamber of Commerce to check out whether Petitioner listed his business address. Petitioner's address was listed as "Center for Human Growth and Business Insights, 204 West Main Street, Mechanicsburg, PA 17055 . . . (717) 458-5435 . . . [c]ontact person, Dr. Joseph Abraham, www.dr-joseph.com. H.T. at 61.

Petitioner failed to appear at the hearing to present any evidence contradicting the Department's charges: Attorney Kenneth Suter, for the Commonwealth, "I . . . at 9:40 . . . called Dr. Abraham at the phone number listed

in Exhibit A, which was (717) 943-0959, I reached Dr. Abraham who identified . . . himself [as Dr. Joseph Abraham] and indicated that he would not be attending today's hearing."  H.T. at 7.

The Board made the following pertinent findings of fact:

1. Respondent [Petitioner] does not nor has he ever held a license to practice psychology in the Commonwealth of Pennsylvania . . . .

2. Respondent [Petitioner] used the Center For Human Growth And Business Insights, 204 West Main Street, Mechanicsburg, PA 17055 as an address for his business in Pennsylvania . . . .

3. In or around November 2010, Respondent [Petitioner] maintained a website with the web address of www.dr-joseph.com . . . .

4. On this website, Respondent [Petitioner] refers to himself as 'Dr. Joseph Abraham, Online Psychologist-Expert on Human Behavior' . . . .
. . . .
6. Respondent's [Petitioner's] website includes a link for driving directions to 204 West Main Street, Mechanicsburg, PA 17055 . . . .
. . . .
8. The '717' area code is assigned to central Pennsylvania . . . .

9. Respondent's [Petitioner's] website invites readers to '[g]et your personal Online Counselor or Life Coach by phone or video chat' . . . .

10. Respondent's [Petitioner's] website identifies fees 'for phone or web-cam sessions' . . . .

7

11. Respondent's [Petitioner's] website directs readers to call '717-943-0959' to schedule a session . . . .

12. Respondent's [Petitioner's] website also allows individuals to purchase his services directly from the website . . . .
. . . .
15. Respondent's [Petitioner's] 'Relationship Advice' webpage states that 'Since 1978 I've practiced in Israel as a personal and family Psychologist and Marriage Counsel, since 90' [sic] also as international Online Psychologist and Counselor as well as an Online Relationship Advice Provider' . . . .

16. Respondent's [Petitioner's] 'Relationship Advice' webpage states 'I provide Psychological only in countries that have reciprocity licensure agreement with Israel (most European and Asian and a few Middle East countries. USA and Canada are not included)['] . . . . (emphasis added).

17. Respondent [Petitioner] included the title 'Online Psychologist' on his website through August/September 2010 . . . . (emphasis added).

18. At Respondent's [Petitioner's] direction the title 'Online Psychologist' was removed from Respondent's [Petitioner's] website . . . . (emphasis added).

19. As part of an investigation, on or about February 28, 2011, an investigator with the . . . (BEI) contacted Respondent [Petitioner] via e-mail regarding Respondent's [Petitioner's] services . . . .

20. In the February 28, 2011 e-mail, the BEI investigator stated that he was 'searching for a Psychologist in my area. I am from the Carlisle area and see that you are in Mechanicsburg, PA' . . . .

21. On or about February 28, 2011, Respondent [Petitioner] replied to the investigator's e-mail, wherein Respondent [Petitioner] directed the investigator to Respondent's [Petitioner's] website and stated he does not provide 'traditional psychological services' . . . .

22. Respondent's [Petitioner's] reply also stated that he provides 'Relationship Advice' . . . .

23. On or about June 6, 2011, a BEI investigator sent Respondent [Petitioner] an e-mail inquiring, among other matters, what software is used for the counseling sessions and if it is secure . . . .

24. In the June 6, 2011 e-mail, the BEI investigator also stated that the Respondent [Petitioner] seems to be a 'very qualified Psychologist' . . . .

25. In his e-mail response, Respondent [Petitioner] stated that he uses the phone and Skype for counseling sessions . . . .

27. Respondent [Petitioner] received the Amended Order to Show Cause and filed an Answer thereto and elected not to attend the formal hearing . . . .

28. The Commonwealth of Pennsylvania expended $890.32 to investigate this case . . . .

Final Adjudication and Order of the Board, December 17, 2013, Findings of Fact (F.F.) Nos. 1-6, 8-12, 15-25, and 27-28 at 2-4.

The Board determined:

Here, the Respondent [Petitioner] was offering psychological services to the public without being properly licensed. Because Respondent [Petitioner] is not in compliance with the requirements that the Board has instituted through its regulations to insure that psychological services are current and conform to its

9

> code of ethics, members of the public could be harmed by his activities. Additionally, Respondent [Petitioner] has failed to present any evidence of mitigation or show any remorse for his actions. (Emphasis added).

Board's Adjudication, Sanctions at 9. The Board imposed a $4,000.00 civil penalty and further ordered Petitioner to pay $890.32, the cost incurred by the Department, to conduct its investigation of the matter.

Essentially, the issues, as framed by the Department in its Counterstatement of the Questions Involved, are whether the Board had jurisdiction over the present matter and whether the Board's findings are supported by substantial evidence.[2]

---

[2] Pa. R.A.P. 2116(a) (**Statement of Questions Involved**) provides that "[t]he statement of questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail . . . [e]ach question shall be followed by an answer stating simply whether the . . . government unit agreed, disagreed, did not answer, or did not address the question . . . ." (emphasis added). Petitioner failed to comply with Pa. R.A.P. 2116(a). "Petitioner's statement of questions involved does not concisely state the issues to be resolved and does not state how the Board addressed the questions . . . [t]his section contains unnecessary details, is 27 pages long and includes arguments and citations to evidence that were not presented to the Board. (emphasis added). Brief of Respondent at 9.

Pa. R.A.P. 2117(a)(1)(4)(b) (**Statement of the Case**) provides that "[t]he statement of the case shall contain . . . a statement of the form of action, followed by a brief procedural history of the case . . . [a] closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known . . . all argument to be excluded." Again, Petitioner failed to comply with Pa. R.A.P. 2117. "Here, Petitioner's statement of the case does not provide a procedural history of the case or a chronological statement of the facts . . . [i]t leaves the reader guessing as to what actions occurred before the Board and what evidence the Board actually received." Brief of Respondent at 9-10. "The section does, however, contain numerous points of argument which is expressly prohibited by subsection (b)." Brief of Respondent at 10.

Pa. R.A.P. 2119 (**Argument**) provides that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part –in distinctive type . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Petitioner failed to comply with Pa. R.A.P. 2119.
**(Footnote continued on next page…)**

10

**I. Whether The Board Had Jurisdiction To Adjudicate The Present Matter.**

Section 1 of the Act, 63 P.S. § 1201, provides:

The practice of psychology in the Commonwealth of Pennsylvania is hereby declared to affect the public safety and welfare, and to be subject to regulation and control in the public interest to protect the public from unprofessional, improper, unauthorized and unqualified practice of psychology, and from unprofessional conduct by persons licensed to practice psychology. <u>This act should be liberally construed to carry out these objects and purposes</u>. (emphasis added).

Initially, Petitioner contends[3] that the Board lacked jurisdiction over his activities because he was only providing information on his website. Specifically, Petitioner asserts that the website www.dr-joseph.com is owned by an Israeli marketing firm and as a result it is fully and solely liable for the content.

---

**(continued…)**

"Petitioner's argument section consists of one page and does not contain any of the sections listed in his statement of questions involved." Brief of Respondent at 11. "The arguments presented consist of general personal statements without any citations to the record or legal precedent in support [and] . . . the section does not set forth any alleged errors that were committed by the Board." Brief of Respondent at 11.

The Department requests this Court to dismiss Petitioner's appeal based on his failure to comply with "the minimal requirements for writing an appellate brief . . . [which] precludes the court from conducting a meaningful review of the matters." <u>Means v. Housing Authority of City of Pittsburgh</u>, 747 A.2d 1286, 1287-89 (Pa. Cmwlth. 2000); <u>Kochan v. Department of Transportation, Bureau of Driver Licensing</u>, 768 A.2d 1186, 1188 (Pa. Cmwlth. 2001).

Although the defects in Petitioner's brief are substantial, this Court will not dismiss Petitioner's appeal but will render meaningful appellate review based upon the Department's counter statement of the questions involved.

[3] This Court's review is limited to determining whether constitutional rights were violated, whether the decision is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. <u>Singer v. Bureau of Professional and Occupational Affairs State, Board of Psychology</u>, 633 A.2d 246, 247 (Pa. Cmwlth. 1993).

Petitioner states that although he is part owner of this foreign company he is not an active manager.

A review of the evidence indicates otherwise. **First**, Petitioner's business address stated on the website was 204 West Main Street, Mechanicsburg, PA 17055. H.T. at 9. Petitioner's website also displayed a link for driving directions to the above-mentioned address. H.T. at 26.

**Second**, Petitioner's website listed a telephone number with the area code "717" which is assigned to Central Pennsylvania. H.T. at 23. Further, Petitioner's website encouraged viewers to "Online Counseling [where we] engage in ongoing conversations in which you, the client, and I, your online counselor, life coach or advisor provider, are in separate locations, but still together." H.T. at 24. Finally, Petitioner's website identified his fees "for phone or webcam sessions" with instructions to call "717-943-0959" for an appointment. H.T. at 20 and 23; Exhibit C-6.

**Third**, the record clearly established that Petitioner was a resident of Pennsylvania and his counseling business was situated in Pennsylvania. In fact, Petitioner admitted that he was a resident of Pennsylvania. C.R. at 2. Here, Petitioner did not operate a "passive" website but was conducting business through his website to actively solicit Pennsylvania residents to sign up for his services as a psychologist, an online counselor, or a life coach. See Zippo Manufacturing Company v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).

Pursuant to Section 1 of the Act, 63 P.S. § 1201, our Pennsylvania Legislature empowered the Board to regulate the practice of psychology and to

12

protect the residents of Pennsylvania from unqualified and unlicensed individuals from practicing such profession. The Board properly exercised jurisdiction over Petitioner.[4]

## II. Whether The Board's Findings Of Fact Are Supported By Substantial Evidence.

Petitioner next argues that the Board's findings were erroneous and not supported by substantial evidence.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Valley View Civic Association v. Zoning Board of Adjustment, 462 A.2d 637, 640 (Pa. 1983). "Moreover, an administrative agency has broad discretion in the performance of its administrative duties and functions, and this Court cannot overturn an agency's exercise of its discretion absent fraud, bad faith, or blatant abuse of discretion." American Auto Wash, Inc. v. Department of Environmental Protection, 729 A.2d 175, 178 n.6 (Pa. Cmwlth. 1999). "When we review an administrative order, the prevailing party is entitled to the benefit of every inference which can be logically drawn from the evidence when viewed in a light most favorable to the prevailing party." Herzog v. Department of Environmental Resources, 645 A.2d 1381, 1387

---

[4] As the Department noted, Petitioner's reliance on Zippo was misplaced:
> Petitioner argues that the Board did not have jurisdiction over his activities stemming from his website because it was only providing information and cited Zippo . . . for this proposition. Petitioner's reliance on Zippo is misplaced. Zippo deals with the issue of personal jurisdiction over nonresidents in a federal lawsuit. Thus, this case is not applicable to the instant facts.

Brief of Respondent at 19.

(Pa. Cmwlth. 1994), quoting <u>Doerr v. Pennsylvania Liquor Control Board</u>, 491 A.2d 299, 302 (Pa. Cmwlth. 1985).

Section 2 of the Act, 63 P.S. § 1202, provides:

**'Practice of psychology'** means offering to render or rendering to individuals . . . or the public for remuneration any service involving the following:

(i) The application of established principles of learning, motivation, perception, thinking, and emotional relationship to problems of personality, evaluation, group relations, and behavior adjustment. <u>The application of said principles includes, but is not restricted to, counseling and the use of psychological methods with persons . . . with adjustment problems in the areas of work, family, school, and personal relationships . . . and offering services as a psychological consultant</u>. (emphasis added).

(ii)(a) '**Measuring and testing,'** consisting of the psychological assessment and evaluation of abilities, attitudes, achievements, adjustments, motives, personality dynamic and/or other psychological attributes of individuals by means of standardized measurements or other methods, techniques or procedures recognized by the science and profession of psychology, (b) **'psychological methods,'** consisting of the application of principles of learning and motivation in an interpersonal situation . . . , (c) **'psychological consulting,'** . . . <u>rendering expert psychological opinion, psychological evaluation, or engaging in applied psychological search</u>. (emphasis added).

Section 3 of the Act, 63 P.S. § 1203 (**Necessity for license**), provides:

It shall be unlawful for any person to engage in the practice of psychology or to offer or attempt to hold himself out to the public by any title or description of services incorporating the words 'psychological,'

14

'psychologist,' or 'psychology' <u>unless he shall first have obtained a license pursuant to this act</u> . . . . (emphasis added).

In the present controversy, the Department filed an order to show cause and charged Petitioner with the unlicensed practice of psychology as well as holding himself out to the public by title or description of services incorporating the words "psychological", "psychologist", or "psychology" without first acquiring a license in violation of Section 3 of the Act. Order to Show Cause, Count One and Count Two at 2-3; C.R. at 1. Petitioner admitted that although he was licensed in Israel he was not licensed in Pennsylvania as a psychologist. Further, the Department presented evidence that Petitioner operated a counseling service in the Commonwealth with a website at www.dr-joseph.com. C.R. 1; Exhibit B and C; H.T. at 10. Petitioner also identified himself as Dr. Joseph Abraham during the course of the Department's investigation. H.T. at 10-11.

Here, the Board found that Petitioner's services and the description of his services offered for a fee on his website constituted the practice of psychology as defined in the Act. "It is logical to presume that professionals sitting on an administrative board charged with regulating a profession will draw upon their special expertise in the determinations they are called upon to make." Markis v. Bureau of Professional and Occupational Affairs, State Board of Psychology, 599 A.2d 279, 282 (Pa. Cmwlth. 1991). There was substantial evidence to support the Board's determination that Petitioner violated Section 3 of the Act, 63 P.S. § 1203.[5]

---

[5] Based on the record, the Board properly imposed a civil penalty on Petitioner for the unlawful practice of psychology pursuant to Section 11(b) of the Act, 63 P.S. § 1211(b) and **(Footnote continued on next page…)**

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

_____

**(continued…)**

Section 5(b)(4) of an Act Empowering the General Counsel or his Designee to Issue Subpoenas for Hearing Examiners in the Bureau of Professional and Occupational Affairs; Providing Additional Powers to the Commissioner of Professional and Occupational Affairs; and further Providing for Civil Penalties and License Suspension, Act of July 2, 1993, P.L. 345, *as amended*, 63 P.S. § 2205(b)(4).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Abraham,  :
               Petitioner  :
                             :
         v.  :
                             :
Bureau of Professional  :
and Occupational Affairs,  :
State Board of Psychology,  :   No. 64 C.D. 2014
               Respondent  :

# **O R D E R**

AND NOW, this 11th day of August, 2014, the order of the Bureau of Professional and Occupational Affairs, State Board of Psychology in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge