IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gibraltar Rock, Inc., :
                Petitioner :
 :
          v. : No. 500 C.D. 2020
 : Argued: March 18, 2021
Pennsylvania Department :
of Environmental Protection, :
           Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE LEAVITT                        FILED: June 30, 2021

Gibraltar Rock, Inc. (Gibraltar) petitions for review of an adjudication of the Pennsylvania Environmental Hearing Board (Board) that rescinded permits issued by the Department of Environmental Protection (DEP) for the operation of Gibraltar's rock quarry. The Board found that the rock quarry's proximity to another property designated as hazardous under the Hazardous Sites Cleanup Act[1] made it unlikely that the quarry could be operated without drawing the contaminants towards Gibraltar's property. Accordingly, the Board rescinded Gibraltar's 2005 permits and held that until DEP remediates the contamination on the adjacent property, Gibraltar cannot open a quarry on its property. Gibraltar contends that the Board abused its discretion. In light of its agreement to monitor its property for the intrusion of groundwater contaminants from the hazardous site and to treat any contaminants, Gibraltar contends that the Board should have remanded the permits to DEP for further consideration.

_____

[1] Act of October 18, 1988, P.L. 756, 35 P.S. §§6020.101-6020.1305.

Concluding that the Board abused its discretion by tying Gibraltar's lawful use of its land to DEP's action, or inaction, we reverse and remand the matter to the Board.

**Background**

On April 15, 2005, DEP issued permits under the Noncoal Surface Mining Conservation and Reclamation Act[2] to allow Gibraltar to operate a quarry on its 241-acre property in New Hanover Township (Township) in Montgomery County, Pennsylvania. By regulation, such mining permits are permanent but must be activated within three years of issuance. *See* 25 Pa. Code §77.128(b).[3] Also on April 15, 2005, DEP issued Gibraltar a National Pollutant Discharge Elimination

---

[2] Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§3301-3326. The Act provides for, *inter alia*, the conservation and improvement of areas of land affected in the surface mining of noncoal minerals, decreasing soil erosion, preventing pollution of rivers and streams and eliminating hazards to health and safety. Section 2 of the Noncoal Surface Mining Conservation and Reclamation Act, 52 P.S. §3302; *Tinicum Township v. Delaware Valley Concrete, Inc.*, 812 A.2d 758, 760 n.4 (Pa. Cmwlth. 2002).

[3] The applicable regulation provides:

> A permit will terminate if the permittee has not begun the *noncoal mining activities covered by the permit within 3 years of the issuance of the permit*. [DEP] may grant reasonable extensions of time for commencement of these activities upon receipt of a written statement showing that the extensions of time are necessary if litigation precludes the commencement or threatens substantial economic loss to the permittee or if there are conditions beyond the control and without the fault or negligence of the permittee. Requests for extensions shall be submitted to [DEP] prior to expiration of the permit. If a permit has not been activated within 3 years or the permittee has not been granted an extension, the permittee may apply for a permit renewal.

25 Pa. Code §77.128(b) (emphasis added).

2

System (NPDES)[4] permit. Such permits are issued for five-year terms. 25 Pa. Code §77.128(a).[5] Neither permit was appealed to the Board by an interested third party.

In the meantime, Gibraltar sought a special exception under the Township's zoning ordinance to operate a quarry on that part of its property located in the district zoned for heavy industry. Gibraltar also filed a substantive validity challenge to the zoning ordinance as exclusionary of a rock quarry use and challenged the requirement in the Township's Subdivision and Land Development Ordinance (SALDO) that conditioned approval of an industrial land development plan upon the donation of land or cash in lieu thereof.

In 2007, the zoning hearing board granted Gibraltar a special exception subject to the condition, *inter alia*, that it construct berms and screening around the perimeter of the quarry prior to commencement of quarrying. Gibraltar appealed and, with the consent of DEP, deferred commencement of mining while the zoning litigation was ongoing.

In 2008, DEP advised Gibraltar that it would not grant another permit extension, and Gibraltar began construction of berms at the quarry. The Township obtained a preliminary injunction to stop Gibraltar's activity until it secured all zoning approvals. DEP then approved a series of temporary cessations of operations

---

[4] The NPDES permit is required by the federal Clean Water Act, 33 U.S.C. §§1251-1388. The NPDES permit sets limits on the pollutants that a permittee can discharge into water within the United States, imposes monitoring and reporting requirements, and contains other provisions to ensure that the discharge does not harm water quality or public health. *See NPDES Permit Basics*, U.S. ENV'T PROT. AGENCY, https://www.epa.gov/npdes/npdes-permit-basics (last visited 6/29/2021).

[5] The regulation provides that "[a] permit will be issued for the duration of the mining and reclamation operation except for the NPDES permit, which shall be renewed every 5 years." 25 Pa. Code §77.128(a).

under the mining permits because of the injunction.[6] The Township appealed DEP's grant of temporary cessations to the Board.

In 2011, while the Township's appeals of the temporary cessations were pending with the Board, DEP discovered that a residential water well in the Township contained levels of contaminants that exceeded safe drinking water standards. DEP's investigation revealed the source to be the "Hoff VC Site," which is short for Hoffmansville Road and vinyl chloride.[7] As an interim response, DEP funded the construction of a waterline main, the laterals to each affected residential property and the connection of the laterals to the plumbing in each affected property. The residential water wells were closed, and the construction was completed in 2014. The Hoff VC Site is located on land adjacent to Gibraltar's property.

In 2013, this Court upheld the Township's condition in Gibraltar's special exception that required the installation of berms and screens prior to the commencement of quarry operations. *In re Gibraltar Rock, Inc.* (Pa. Cmwlth., No. 2287 C.D. 2011, filed October 11, 2013) (unreported). However, this Court reversed

---

[6] The applicable regulation states, in relevant part, as follows:

> Before temporary cessation of operations, the operator shall submit a written application to [DEP], including a statement of the number of acres that have been affected, the reason for cessation, the date on which temporary cessation is anticipated and the date on which the operator anticipates that operations will resume. Except as provided in subsection (c), [DEP] will not approve the temporary cessation of an operation for a period exceeding 90 days unless the cessation is due to seasonal shutdown or labor strikes.

25 Pa. Code §77.651(b).

[7] The "Hoff VC Site" has a record of contamination dating back to the 1970s and has been officially designated as a cleanup site under the Hazardous Sites Cleanup Act. A site is defined, in relevant part, as an "area where a contaminant or hazardous substance has been deposited, stored, treated, released, disposed of, placed or otherwise come to be located." Section 103 of the Hazardous Sites Cleanup Act, 35 P.S. §6020.103.

4

the Township's condition that Gibraltar dedicate 80 acres of land to the Township or pay a $2,183,375 fee in lieu thereof.

On October 10, 2014, Gibraltar applied for a renewal of its NPDES permit, as is required by regulation. A few weeks later, on November 3, 2014, the Board issued an adjudication sustaining, in part, the Township's appeal of DEP's grant to Gibraltar of a cessation of its surface mining permit. In so doing, the Board opined that "Gibraltar Rock is required to apply for a permit renewal to allow [DEP] to review the application to ensure that the 2005 permit is still up-to-date from a noncoal surface mining regulatory perspective." Board Adjudication, 11/3/2014, at 37.

In response, on January 16, 2015, Gibraltar submitted a permit renewal application to DEP that addressed the contamination at the nearby Hoff VC Site. DEP issued technical deficiency letters that directed Gibraltar to address the possible groundwater migration of contaminants from the Hoff VC Site. In response, Gibraltar proposed increasing the frequency of sampling at its own monitoring wells and at those located on the Hoff VC Site, once it opened the quarry. Assuming that final remediation of the Hoff VC Site would not be completed before quarry operations began, Gibraltar explained that repeated sampling at its wells and at the Hoff VC Site would detect migration of contaminants. Gibraltar agreed to treat any contaminants that appeared in the groundwater on its property.

In February 2016, the Township and "Ban the Quarry," a citizens group, formally objected to Gibraltar's permit renewal application and requested a public hearing. DEP held a public hearing and issued a report. Gibraltar responded to each point made in the report.

Thereafter, DEP discovered a concrete vault at the Hoff VC Site containing hazardous compounds. DEP emptied the vault. On January 4, 2017, DEP directed Gibraltar to address the potential for the contaminants in the concrete vault to migrate onto Gibraltar's property. Gibraltar again responded that it would monitor its groundwater for contaminants and, if discovered, remediate them. On March 2, 2017, DEP notified Gibraltar that it had completed its technical review of Gibraltar's permit renewal application but required a new mining and reclamation bond. Gibraltar provided the new reclamation bond.

On August 11, 2017, the Township, which objected to the permit renewal application, requested DEP to require Gibraltar to produce a fate and transport analysis that would measure the extent and movement of contaminants in groundwater, *i.e.,* the "plume" of discharge from the Hoff VC Site. Joint Stipulation, filed 10/17/2019, ¶45, Notes of Testimony, 10/23/2019, at 657. In response, Gibraltar's expert prepared a "Fate and Transport Analysis and Assessment of Hoff VC Site Contaminant Migration." *Id*. at 89. This assessment, called the EarthRes Model, concluded that the plume would not enter the quarry mining area. Specifically, the pumping of water from the quarry was unlikely to draw contamination from the Hoff VC Site. Groundwater generally flows south and west from the Hoff VC Site; Gibraltar's quarry will be located south and east of the Hoff VC Site. Because the quarry footprint would develop slowly, Gibraltar would not do significant pumping for approximately 15 years, by which time the contaminants at the Hoff VC Site would have been resolved, either by remediation or by natural degradation.

Gibraltar provided updated background monitoring reports; responded to each objection letter; provided DEP additional and updated information; and

6

posted a $1,422,935 reclamation bond.  On July 2, 2018, DEP renewed Gibraltar's surface mining and NPDES permits.

## Board Hearing

The Township appealed DEP's renewal of the permits to the Board. Objectors Paradise Watchdogs/Ban the Quarry and John C. Auman intervened in the Township's appeal.  The Board held five days of hearings.  The parties presented a stipulation of facts, exhibits, and expert testimony.

The Township presented the testimony of Charles Francis McLane III and Toby Kessler, who are licensed geologists.  McLane opined that the Gibraltar EarthRes Model was flawed.[8]  Based on his own model, McLane opined that pumping water at the quarry would draw contaminated groundwater at the Hoff VC Site eastward in the direction of the quarry and away from its generally westward flow.  Kessler opined that one contaminant reported by Gibraltar in a monitoring well had originated at the Hoff VC Site.

Gibraltar presented the testimony of Louis F. Vittorio and Michael Weikel, both licensed geologists, in support of the EarthRes Model.  Vittorio explained that there are tight geological formations at the Hoff VC Site without substantial fractures.  Groundwater flows from the Hoff VC Site southwest, and the quarry is located southeast of the Hoff VC Site.  Vittorio opined that pumping at the quarry would cause a steep cone of depression and not draw the groundwater away from its usual course.  Weikel prepared models that demonstrated that quarry pumping would not draw the contamination from the Hoff VC Site to Gibraltar's property.  In running his model, Weikel ascertained the groundwater levels before

---

[8] Specifically, McLane noted that the model was different from one done by Gibraltar in 2003; the model was too small to quantify the Hoff VC Site impact on the quarry; and the model used inaccurate assumptions, such as the assumption that the contaminants had a half-life of 13 years.

7

and after quarry pumping to measure flow at the boundary, using DEP data. He used a conservative assumption, *i.e.,* that the contaminants at the Hoff VC Site would be constant and not degrade. He used a two-dimensional model, which reduced the time it would take for the contamination to reach the quarry. Weikel's model, with its conservative assumptions, showed the contaminants at the Hoff VC Site would not have any impact on the quarry's discharge limits over the 50-year life of the quarry.

Three DEP employees testified. Colin Wade, supervisor of the Hoff VC Site, explained that the remediation of the concrete vault was completed, and that DEP will continue sampling its monitoring wells at the site. DEP has initiated a pilot program to evaluate the groundwater contamination for remediation. Michael P. Kutney, the permits chief at the Pottsville Office, and Michelle Hamlin, a geologist specialist, testified that DEP accepted the EarthRes Model when it reviewed Gibraltar's permit renewal application. The witnesses agreed with the conclusion in the EarthRes Model that the groundwater at the Hoff VC Site would not migrate to the quarry. Had they learned of McLane's criticisms of the report prior to renewing Gibraltar's permits, they would have required Gibraltar to respond before rendering their decision.

### Board Adjudication

The Board rescinded DEP's renewal of Gibraltar's mining and NPDES permits. It found that pumping water out of the quarry would draw the plume of contaminated groundwater at the Hoff VC Site toward the quarry. In this regard, the Board credited the Township's expert on groundwater modeling and rejected Gibraltar's expert. The Board concluded that DEP erred in renewing Gibraltar's mining permits.

8

First, the Board found that DEP was mistaken in its finding that Gibraltar's quarry would not adversely impact the quality of the waters of the Commonwealth. Second, the Board rejected DEP's assertion that "[s]hould the plume spread in an unanticipated manner . . . [DEP] would require Gibraltar to be responsible for any remediation." Board Adjudication, 4/24/2020, at 49 (quoting DEP Brief at 87 n.2). The Board observed that Gibraltar's sentinel well program was not adequate because two sentinel wells were "already contaminated[,]" and, thus, not able to detect contamination migrating from the Hoff VC Site. Board Adjudication, 4/24/2020, at 62. Further, DEP did not establish a mechanism to ensure that NPDES permit limits will be honored.[9] The bond would not serve this purpose because it covered the cost of land reclamation, not the cost of remediation of groundwater contamination from the Hoff VC Site. Finally, DEP did not act with prudence and impartiality as the trustee of Pennsylvania's public natural resources, as required by the Environmental Rights Amendment in Article I, Section 27 of the Pennsylvania Constitution.[10]

The Board observed that DEP has no current plans to remediate the Hoff VC Site because its investigation remains ongoing. Board Adjudication, 4/24/2020, at 27, Findings of Fact Nos. 138-40. The Board stated:

---

[9] According to the Board, DEP usually issues a water quality management permit, known as a Part II permit, or some similar mechanism to ensure that NPDES permit limits will be met. Board Adjudication, 4/24/2020, at 64.

[10] It states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27.

The Hoff VC Site still needs to be cleaned up. The plume of contaminated groundwater appears to be spreading even without the more active migration that quarry pumping will cause. The scope of the groundwater program in particular and the contamination of the site in general has not been defined, let alone remediated. However, the potential for remaining harm is underscored by the work that [DEP] has already performed.

Board Adjudication, 4/24/2020, at 69.

Based upon these findings of fact and conclusions of law, the Board rescinded the permits. In support, the Board explained:

[DEP] has issued the Gibraltar permits prematurely in light of the unanswered questions regarding the Hoff VC Site. As investigation and remediation of that hazardous site evolves, it may become clear that quarrying can be accomplished in harmony with the cleanup. However, *given the lack of momentum on that site, we are concerned that a remand pending [hazardous site cleanup] activities would drag on indefinitely*, again giving rise to the staleness concerns that required a remand in our first Adjudication. Therefore, we will rescind the permits but without prejudice to Gibraltar's right to reapply for the permits *if remediation of the Hoff VC Site matures to the point that it becomes apparent that there will be no presumptive evidence of potential pollution* and quarrying will not unreasonably interfere with the [hazardous site] cleanup.

*Id*. at 78-79 (citation omitted, emphasis added). Gibraltar petitioned this Court for review.

### Appeal

Before this Court, Gibraltar raises one issue. It contends the Board abused its discretion by rescinding Gibraltar's permits rather than remanding the permits to DEP to address the concerns set forth by the Board in its adjudication. Gibraltar requests the Court to reverse the Board and remand the matter of its permit renewal to DEP. In support, it advances three arguments.

10

First, Gibraltar argues that substantial evidence does not support the Board's finding that there is a "lack of momentum" at the Hoff VC Site or that DEP's cleanup activities will drag on indefinitely. Gibraltar Brief at 35. To the contrary, the record shows that DEP is actively engaged in cleanup. Further, the record demonstrated a constant exchange of information between Gibraltar and DEP about Gibraltar's agreement to address migration of contaminants onto its property. Nevertheless, the Board did not remand the permit to DEP, as it did in the 2014 proceeding.

Second, the Township acted in "bad faith" by withholding McLane's expert report from DEP. *Id*. at 21. Had McLane's report been provided to DEP earlier, DEP could have resolved the issues identified by McLane before making its decision on the permits. Instead, the Township and Ban the Quarry weaponized "this one critical piece of evidence[]" by waiting until the hearing to present it. *Id*. at 39-40.

Third, Gibraltar asserts that a remand is necessary for practical reasons. Gibraltar states:

> It should be noted that Gibraltar [] filed to renew its NPDES Permit, as it is required to do every five (5) years, prior to the Adjudication being issued which continues to be pending before [DEP] and, if the NPDES Permit is rescinded, [DEP] will no longer be inspecting the stormwater controls that have already been installed, which would be an unintended consequence of rescinding the [a]pprovals.

*Id*. at 40. Preparing an application for a noncoal surface mining permit and an NPDES permit is "enormously expensive" and time-consuming, and to require Gibraltar to start all over again is "manifestly unjust." *Id*. at 41. Further, on remand, DEP may consider the concerns raised by McLane and credited by the Board. A

11

remand will allow DEP to evaluate the issue and include conditions to address the concerns identified by the Board.

DEP responds that Gibraltar "dwells almost exclusively on isolated portions of the testimony" to support its assertion that the Board's findings lack evidentiary support. DEP Brief at 16. The Board rescinded the permits because DEP renewed the permits prematurely, given the contamination at the Hoff VC Site. The Board made findings of fact about the Hoff VC Site, and they are supported by credited expert testimony. A remand cannot negate these findings, which are binding on DEP.

The Township contends that the Board should be affirmed because DEP should not have renewed the permits. Accordingly, Gibraltar's characterization of rescission as "manifestly unjust" lacks merit. Township Brief at 21 (quoting Gibraltar Brief at 41). The Township argues that "it is hard to imagine" how Gibraltar can show that the Board abused its discretion. *Id*. at 20-21. The Township rejects Gibraltar's argument that it had a duty to produce McLane's expert report at any time prior to the Board hearing. It also rejects Gibraltar's concern that DEP will stop inspecting Gibraltar's stormwater controls, noting that DEP has the police powers necessary to monitor Gibraltar's stormwater controls regardless of the status of the permits.

Paradise Watchdogs/Ban the Quarry and John C. Auman adopt the arguments made by DEP before this Court. They further add that the Board rescinded the permits for a variety of reasons relating to DEP's failure to consider the Hoff VC Site as part of the application. This supports the Board's decision to rescind the permits.

12

## Analysis

Gibraltar contends that the Board abused its discretion in rescinding Gibraltar's mining permits.[11] The Board's stated reason for doing so was the contamination at the Hoff VC Site and DEP's "lack of any momentum" with the cleanup activities pursuant to the Hazardous Sites Cleanup Act. Board Adjudication, 4/24/2020, at 78. By basing its rescission of Gibraltar's mining permits on reasons not related to Gibraltar, the Board exceeded its authority under the Noncoal Surface Mining Conservation and Reclamation Act. Gibraltar requests this Court to remand the matter of its renewal permits to the Board for further remand to DEP.

We begin with a review of the applicable law. Section 24 of the Noncoal Surface Mining Conservation and Reclamation Act provides that

> [a]ll . . . permits . . . pertaining to operations regulated under this act shall remain in full force and effect *unless and until* modified, *repealed*, suspended, superseded or *otherwise changed under the terms of this act and the regulations* promulgated under this act.

---

[11] Our scope of review determines "whether the Board committed constitutional violations, [or] errors of law, or whether any necessary findings of fact made by the Board were unsupported by substantial evidence." *Pennsylvania Game Commission v. Department of Environmental Resources*, 509 A.2d 877, 880 (Pa. Cmwlth. 1986) (citing 2 Pa. C.S. §704 and *Willowbrook v. Department of Environmental Resources*, 499 A.2d 2, 3 (Pa. Cmwlth. 1985)). When reviewing the Board's adjudication, the prevailing party is given the benefit of every inference that can be logically drawn from the evidence when viewed in a light most favorable to the prevailing party. *Pennsylvania Game Commission*, 509 A.2d at 880.

Courts do not substitute their judgment for that of the administrative agency. *A.P. Weaver and Sons v. Sanitary Water Board*, 284 A.2d 515, 520-21 (Pa. Cmwlth. 1971). However, an administrative agency's exercise of its discretionary authority does not render it immune from judicial review. *Nationwide Mutual Insurance Company v. Commonwealth*, 324 A.2d 878, 881 (Pa. Cmwlth. 1974). An agency's determination will be set aside if there is proof of fraud, bad faith, or blatant abuse of discretion, which occurs when it exceeds its authority or misapplies the law. *American Auto Wash, Inc. v. Department of Environmental Protection*, 729 A.2d 175, 178 n.6 (Pa. Cmwlth. 1999) (citing *Herzog v. Department of Environmental Resources*, 645 A.2d 1381, 1387 (Pa. Cmwlth. 1994)).

52 P.S. §3324 (emphasis added). Section 24 plainly authorizes the repeal of mining permits.[12] However, this permit repeal must relate to "the terms" of the Noncoal Surface Mining Conservation and Reclamation Act and its regulations. *Id*.

Section 8(a) of the Noncoal Surface Mining Conservation and Reclamation Act requires an application for a permit issuance or renewal to be accurate and complete; satisfy the requirements of the act and regulations; and relate to an operation that will not cause pollution to the waters of this Commonwealth. 52 P.S. §3308(a). The regulation states that a permit renewal will not be approved unless "the application affirmatively demonstrates and the Department finds in writing, on the basis of the information in the application or from information otherwise available," that the requirements enumerated therein are met. 25 Pa. Code §77.126(a). A permit may be refused if the applicant "has failed and continues to fail to comply with any provisions" of the Noncoal Surface Mining Conservation and Reclamation Act or has shown a "lack of ability or intention to comply with any provision of [the] act as . . . indicated by past or continuing violations." Section 8(b)(1) of the Noncoal Surface Mining Conservation and Reclamation Act, 52 P.S. §3308(b)(1).[13]

---

[12] The Board has a duty to determine if DEP's "action can be sustained or supported by the evidence taken by the Board." *Warren Sand & Gravel Company, Inc. v. Department of Environmental Resources*, 341 A.2d 556, 565 (Pa. Cmwlth. 1975). Where the Board finds DEP abused its discretion, it may substitute its discretion for that of DEP and order the relief requested. *Pequea Township v. Herr*, 716 A.2d 678, 686 (Pa. Cmwlth. 1998) (citing *Warren Sand & Gravel Company*, 341 A.2d at 565).

[13] It states, in relevant part, as follows:

(b) Other grounds for refusal to issue, renew or amend permit.--

(1) The department shall not issue any surface mining permit or renew or amend any permit if it finds, after investigation and an opportunity for an informal hearing, that:

14

The Board did not rescind Gibraltar's permit because DEP and the Township demonstrated that Gibraltar failed to comply or intended not to comply with the Noncoal Surface Mining Conservation and Reclamation Act and the applicable regulations. Rather, the Board based its rescission decision on DEP's conduct at the Hoff VC Site. It expressed its concerns as follows:

> [t]he Hoff VC Site still needs to be cleaned up. *The plume of contaminated groundwater appears to be spreading even without the more active migration that quarry pumping will cause.* The scope of the groundwater problem in particular and the contamination of the site in general has not been defined, let alone remediated. . . .
>
> [DEP] in vague terms appears to be battling around internally the idea of some sort of *in situ* treatment of groundwater, but there are no concrete specific plans for further investigation or remediation. Everything is up in the air. But what is certain is that somebody is going to be required to pay for future work.

Board Adjudication, 4/24/2020, at 69-70 (emphasis added). It was DEP's lack of "concrete specific plans" for its remediation of the Hoff VC Site required under another statute, the Hazardous Sites Cleanup Act, that prompted the Board's decision to rescind Gibraltar's permits. *Id.*

---

> (i) *the applicant has failed and continues to fail* to comply with any of the provisions of this act or the act of May 31, 1945 (P.L. 1198, No. 418), known as the Surface Mining Conservation and Reclamation Act; or
>
> (ii) *the applicant has shown a lack of ability or intention to comply with any provision of this act or* the Surface Mining Conservation and Reclamation Act, as indicated by past or continuing violations.
>
> \* \* \*

52 P.S. §3308(b)(1) (emphasis added).

15

This was error. The Board's rescission should have related to deficiencies in Gibraltar's renewal application and the conduct of its abbreviated noncoal surface mining activities on its property. Section 24 of the Noncoal Surface Mining Conservation and Reclamation Act, 52 P.S. §3324 ("[P]ermits . . . pertaining to operations regulated under this act shall remain in full force and effect unless and until modified . . . *under the terms of this act and regulations*[.]"). By rescinding Gibraltar's mining permits on the basis of DEP's action, or inaction, under another statute relating to another property, the Board exceeded its authority and abused its discretion.

Gibraltar's 2005 mining permits authorized Gibraltar to use its land for mining. Its property interest in those permits is beyond peradventure.[14] Gibraltar had its mining permits for 10 years before the Board required a renewal application in 2015. The Board's stated reason for this requirement was to ensure that Gibraltar's mining permits remain "up-to-date from a noncoal surface mining regulatory perspective." Board Adjudication, 11/03/2014, at 37.

Following the Board's adjudication, Gibraltar provided DEP with the information requested for the renewal and did so in a timely manner. Gibraltar addressed the Hoff VC Site and, in response to DEP's concerns, agreed to remediate

---

[14] When the government issues a license or permit, the license or permit is protected by due process. *See City of Philadelphia, Board of License & Inspection Review v. 2600 Lewis, Inc.*, 661 A.2d 20, 22 (Pa. Cmwlth. 1995) ("Government licenses to engage in a business or occupation create an entitlement to partake in a profitable activity and, therefore, are property rights."); *accord Lyness v. State Board of Medicine*, 605 A.2d 1204, 1207 (Pa. 1992) (property rights include the right to pursue a livelihood or profession).

DEP issued Gibraltar a permanent noncoal surface mining permit. 25 Pa. Code §77.128(a). DEP also issued Gibraltar an NPDES permit. Although the NPDES permit must be renewed every five years, Gibraltar is entitled to a presumption of renewal. 25 Pa. Code §77.143(b)(1) ("A valid, existing permit issued by [DEP] will carry with it the presumption of successive renewals upon the expiration of the term of the permit.").

16

contamination that spread onto its property and into the quarry. Despite Gibraltar's unerring cooperation with DEP, the Board decided to

> rescind the permits but without prejudice to Gibraltar's *right to reapply for the permits if remediation of the Hoff VC Site matures to the point that it becomes apparent that there will be no presumptive evidence of potential pollution* and quarrying will not unreasonably interfere with the [hazardous site] cleanup.

Board Adjudication, 4/24/2020, at 79 (emphasis added). The Board's adjudication means that until DEP cleans up the Hoff VC Site on the adjacent property, Gibraltar cannot pursue the lawful use of its land for the operation of a rock quarry.

In *Department of Environmental Resources v. Trautner*, 338 A.2d 718 (Pa. Cmwlth. 1975), this Court held that the Department of Environmental Resources (DER)[15] erred in denying a residential landowner's application for an on-lot sewage treatment system permit. DER denied the landowner's application because the township's comprehensive plan for the disposal of sewage, which it filed pursuant to the Pennsylvania Sewage Facilities Act,[16] did not contain information required by the applicable regulations.

In reversing DER's decision, this Court observed that under the applicable regulations,

> *a property owner can be effectively denied his right to use his property until such time as [t]he municipality has satisfied DER that sewage disposal on the property is in conformity 'with a comprehensive program of water quality management'*. The burden is placed upon the property owner to motivate his municipality to (1) comply with the regulations relevant to amending municipal plans; and (2) satisfy DER that the property

---

[15] The Department of Environmental Resources was renamed the Department of Environmental Protection pursuant to Section 501 of the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. §1340.501.

[16] Act of January 4, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§750.1-750.20a.

17

> owner's plan for sewage disposal is otherwise acceptable. If the municipality fails to act to amend its plan, or cannot or will not fully satisfy DER, for whatever reasons, the property owner is left with no sewage permit and no opportunity to use his land in what is otherwise a completely lawful manner. This situation is confiscatory and tantamount to a taking without due process of law.

*Id.* at 720 (emphasis added). DER asserted that the regulation provided a remedy where a property owner is prejudiced by municipal inaction, but this Court rejected this argument as follows:

> The landowner is still not free to use his land until such time as another party, over whom he has absolutely no control, acts in a manner satisfactory to DER. *There is no guarantee that such action will occur within a reasonable time, or for that matter, ever occur.*

*Id.* at 721 (emphasis added). Here, DEP has not identified any remedy that Gibraltar can employ to push DEP to overcome its sloth with respect to the Hoff VC Site.

By tying Gibraltar's mining permit to DEP's remediation of the Hoff VC Site, the Board gave DEP unfettered control over Gibraltar's property. DEP can stop the quarry by delaying the cleanup of the Hoff VC Site. In the meantime, the Board has authorized DEP to refuse to act on any permit application, new or renewal, from Gibraltar until the Hoff VC Site is declared safe. As in *Trautner*, the Board has effected a taking of Gibraltar's lawful use of its land without due process of law. *See also PBS Coals, Inc. v. Department of Transportation*, 244 A.3d 386, 398 (Pa. 2021) (providing that a *de facto* taking applies to "any governmental action that interferes with property rights"); *accord* M.A. Rosenhouse, J.D., et al., 7 SUMMARY OF PENNSYLVANIA JURISPRUDENCE 2D PROPERTY §11:57 (2d ed. 2021) (a *de facto* taking occurs when a government entity exercises regulatory powers to "substantially" interfere with the owner's beneficial use of his property).

18

There are no drinking wells on Gibraltar's 241-acre property that are imperiled by the plume of contaminants in the groundwater at the Hoff VC Site. Nevertheless, Gibraltar agreed to participate in the cleanup of the Hoff VC Site plume if and when any contaminants appear in the groundwater on Gibraltar's property. It installed sentinel wells and committed to remediate any contaminants detected in the well samplings, regardless of origin. Stated otherwise, Gibraltar has agreed, in principle, to remediate groundwater pollution that it did not create. Its proposed remediation included: aeration, oxidation, thermal distraction, filtration, precipitation and carbon polishing. Board Adjudication, 4/24/2020, at 18, Findings of Fact No. 82.

Given Gibraltar's response, the Board's adjudication is not consonant with Article I, Section 27 of the Pennsylvania Constitution, which provides that the people have "a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment." PA. CONST. art. I, §27; *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911, 931 (Pa. 2017) (citing *Robinson Township v. Commonwealth*, 83 A.3d 901, 951 (Pa. 2013) (plurality)). Without a permit, Gibraltar cannot be called upon to participate in the remediation of the Hoff VC Site to the extent the contaminants migrate to Gibraltar's land. Migration of the contaminants is already occurring, according to the Board, even without any quarrying. Board Adjudication, 4/24/2020, at 69 ("The plume of contaminated groundwater appears to be spreading even without the more active migration that quarry pumping will cause."). Losing Gibraltar's participation in the cleanup of contaminated groundwater itself may work a harm on the environment, *i.e.*, a violation of Article I, Section 27 of the Pennsylvania Constitution.

We hold that the Board erred and abused its discretion in rescinding Gibraltar's permits. Its order did not conform to the terms of the applicable statute and arbitrarily tied Gibraltar's lawful use of its land to the actions of a third party, DEP. The Board effected a *de facto* taking without due process; *a fortiori,* the Board abused its discretion. Instead of rescinding Gibraltar's mining permits, the Board should have remanded them to DEP for further consideration consistent with its findings and stated concerns.

**Conclusion**

The Board's focus on DEP's failings and not on Gibraltar's conduct as a permittee was misplaced. The Board did not find any deficiencies in Gibraltar's plans for operating its quarry, which will be followed by a land reclamation. Nor did the Board find that Gibraltar would not honor its commitment to remediate contamination from the Hoff VC Site that is captured on its land, regardless of whether it gets there by slow migration or because of pumping water out of Gibraltar's quarry. The Board opined that the mechanism for ensuring Gibraltar's commitment is inadequate, but it did not specify how to improve that mechanism. DEP can address that concern on remand.

For these reasons, we reverse the Board's order rescinding Gibraltar's mining permits and remand this matter to the Board with instructions to return this matter to DEP to address the concerns identified by the Board in its adjudication and, if necessary, amend Gibraltar's permits.

_____

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gibraltar Rock, Inc.,            :
                Petitioner      :
                                   :
             v.                  :    No. 500 C.D. 2020
                                     :
Pennsylvania Department      :
of Environmental Protection,    :
               Respondent   :

# **O R D E R**

AND NOW, this 30th day of June, 2021, the April 24, 2020, order of the Environmental Hearing Board (Board) is REVERSED. This matter is REMANDED to the Board with an instruction to remand this matter to the Pennsylvania Department of Environmental Protection to direct Gibraltar Rock, Inc. on what it must do to obtain mining permits pursuant to the Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§3301-3326, and its regulations as provided in the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita